**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEBRA FIALEK
an individual,

           Case No.: 3:18-cv-00136-BJD-MCR

       Plaintiff,

v.

BELLSOUTH TELECOMMUNICATIONS, LLC,
d/b/a AT&T,
a foreign limited liability company,
SUNRISE CREDIT SERVICES, INC.,
a foreign for-profit corporation,
I.C. SYSTEM, INC.,
a foreign for-profit corporation, and
ENHANCED RECOVERY COMPANY, LLC,
a foreign limited liability company,

       Defendants.
_____/

**AMENDED VERIFIED COMPLAINT**

       **COMES NOW**, Plaintiff, DEBRA FIALEK (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, BELLSOUTH TELECOMMUNICAITONS, LLC, d/b/a AT&T (hereinafter, "ATT"), SUNRISE CREDIT SERVICES, INC. (hereinafter "SCS"), I.C. SYSTEM, INC. (hereinafter, "ICS"), and ENHANCED RECOVERY COMPANY, LLC (hereinafter, "ERC") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

       1.     This is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq*. (hereinafter, the "FDCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the

1

"TCPA"), wherein Defendants attempt to collect a consumer debt directly from Plaintiff after Plaintiff cancelled her services provided by ATT and after ATT repeatedly confirmed that Plaintiff did not owe the alleged debt.

2.      Additionally, this is an action for ATT's and ICS's debt collection calls made directly to Plaintiff's cellular telephone using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice, despite ATT and ICS lacking Plaintiff's consent to make such calls to her cellular telephone.

<u>**JURISDICTION, VENUE & PARTIES**</u>

3.      Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code Section 227, as well as 28 United States Code, Section 1337. Supplemental jurisdiction exists for the Florida Consumer Collection Practices Act pursuant to 28 United States Code, Section 1367.  Declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

4.      Venue in this District is proper as Defendants regularly transact business in this District, and the conduct occurs in this District.

5.      At all material times herein, the conduct of Defendants, complained of below, occurs in Duval County, Florida.

6.      At all material times herein, Plaintiff is an individual residing in Duval County, Florida.

7.      At all material times herein, ATT is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 675 W. Peachtree Street, NW, Suite 27-310, Atlanta, Georgia 30308.

8.     At all material times herein, SCS is a foreign for-profit corporation existing under the laws of the state of New York with its principal place of business located at 260 Airport Plaza, Farmingdale, NY 11735.

9.     At all material times herein, ICS is a foreign for-profit corporation existing under the laws of the state of Minnesota with its principal place of business located at 444 Highway 96 East, St. Paul, MN 55127-2557.

10.     At all material times herein, ERC is a foreign for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 8014 Bayberry Road, Jacksonville, Florida 32256.

## FDCPA AND FCCPA STATUTORY STRUCTURE

10.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

11.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

12.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information

3

regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

13.    For example, the FDCPA and FCCPA each prohibit a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt.  *See* 15 U.S.C. §§ 1692(c)-(d) and Fla. Stat. §§ 559.72(7) and (18).

## TCPA STATUTORY STRUCTURE

14.    Congress enacted the TCPA in an effort to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

15.    Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

16.    Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

17.    Additionally, under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at § 227(b)(3)(C).

## **GENERAL ALLEGATIONS**

18.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

19.     At all material times herein, ATT is a "creditor" as defined by Florida Statutes, Section 559.55(5).

20.     At all material times herein, ATT regularly extends and services telecommunication and internet services to consumers in Duval County, Florida and collects consumer debts associated with the same.

21.     At all material times herein, SCS, ICS, and ERC are each a "debt collector" as defined by the FCCPA, Section 559.55(7) and the FDCPA, Section 1692a(6).

22.     At all material times herein, SCS, ICS, and ERC each use interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

23.     At all material times herein, SCS, ICS, and ERC collect or attempt to collect—directly or indirectly—debts owed or due to another, or asserted to be owed or due to another, from consumers in Duval County, Florida.

24.     At all material times herein, Defendants attempt to collect a debt, specifically an alleged balance due on an AT&T U-Verse account referenced by account numbers ending in -7171, -9103, -4169, and/or -4825 (hereinafter, the "Alleged Debt").

25.     At all material times herein, the Alleged Debt is a consumer debt, incurred primarily for personal, household, or family use.

26.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. § 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

27.     At all material times herein, Defendants' conduct, with respect to the Alleged Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

28.     Specifically, at all material times herein, Defendants sent billing statements, collection letters, balance due notices, and made telephone calls directly to Plaintiff in an attempt to collect the Alleged Debt.

29.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

30.     All necessary conditions precedent to the filing of this action occurred or Defendants waived the same.

## FACTUAL ALLEGATIONS

31.     Defendants made telephone calls, as alleged below, to Plaintiff's cellular telephone number 904-XXX-5077 using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

32.     At all material times herein, Plaintiff is the possessor, controller, and regular user of a cellular telephone with assigned telephone number 904-XXX-5077 (hereinafter, "Cellular Telephone").

33.     At no time herein did Defendants possess Plaintiff's prior express consent to make calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

34.     To the extent Plaintiff did provide such prior express consent, Plaintiff nonetheless revoked any alleged prior existing consent the moment she demanded that ATT stop calling her Cellular Telephone in an attempt to collect the Alleged Debt.

35.     Additionally, if Defendants contend the below-referenced calls were made for "informational purposes only," Defendants nevertheless lacked the required prior express written consent necessary to make such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or an APV.

36.     In or about August 2016, Plaintiff entered into an agreement with ATT for ATT U-Verse services.

37.     Approximately one week later, Plaintiff, due to extraneous circumstances, moved into a new residence and had to could no longer receive the benefit of her agreement with ATT, i.e., the ATT U-Verse services.

38.     In or about August 2016, as Plaintiff could no longer use her services, Plaintiff called ATT to cancel her account.

39.     During the immediately-aforementioned call, ATT's employee or representative advised Plaintiff that she could put the account on hold at a cost of five-dollars ($5.00) per month to avoid paying an early termination fee.

40.     Plaintiff agreed to put her services on hold based on the representations made by ATT's employee or representative.

41.     From August 2016 to October 2016, despite Plaintiff agreeing to place her account services on hold, ATT charged Plaintiff the full price contemplated under the original service agreement each month, totaling approximately $271.00.

42.     From August 2016 to October 2016, Plaintiff paid the full amount to ATT each month despite the fact that she did not receive the benefit of services, and despite ATT's representations that it would charge Plaintiff only five-dollars ($5.00) each month to place the account on hold.

43.     In or about November 2016, ATT sent Plaintiff *another* bill for the full price of services rather than the five-dollar ($5.00) charge to place the account on hold.

44.     On or about November 2, 2016, Plaintiff contacted ATT's support representative "Kim G" through ATT's online customer support chat portal.  Please see attached a true and correct copy of said chat transcript labeled as Exhibit "A."

45.     During the immediately-aforementioned electronic communications, Plaintiff advised ATT that she should have only been billed five-dollars ($5.00) per month to place her account hold, that she had already paid ATT approximately $271.00 for services she did not and could not receive, she requested that her account with ATT be canceled, and she requested that the termination fee be waived in consideration of the money she already paid to ATT without receiving the benefit of the services contemplated under the service agreement. *See* Ex. A.

46.     In response, Kim G. advised that "I would be canceling your services backdated, so that you would receive the prorated credit on your account and we would remove the early termination fee from your account in compensation of restoral fee so that you not need (sic) to pay a high amount of early termination fee" and Kim G. advised the account would be cancelled within twenty-four (24) hours. *See* Ex. A.

47.     On or about November 3, 2016, ATT canceled Plaintiff's account.

48.     On or before December 5, 2016, despite ATT previously advising that it would cancel Plaintiff's account, prorate the credit, and wave the early termination fee, ATT sent Plaintiff

*another* billing statement requesting a regular monthly payment on Plaintiff's account (i.e., the Alleged Debt). Please see attached a true and correct copy of said billing statement labeled as Exhibit "B."

49.     On or about December 5, 2016, Plaintiff contacted ATT's support representative "Harry B" through ATT's online customer support chat portal. Please see attached true and correct copy of said chat transcript labeled as Exhibit "C."

50.     During the immediately-aforementioned communications, Plaintiff explained that ATT previously agreed to cancel her account and that she did not owe a balance to ATT as advised by "Kim G." *See* Ex. C.

51.     In response, Harry B. stated that ATT cancelled Plaintiff's account on November 3, 2016, and that Plaintiff's final bill from ATT would be generated within forty-five (45) days to reflect a zero-dollar ($0.00) balance due. *See* Ex. C.

52.     Between December 5, 2016 and December 9, 2016, despite ATT cancelling Plaintiff's account and despite Plaintiff not having a balance due on the account, ATT made multiple telephone calls directly to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV in an attempt to collect the Alleged Debt.

53.     During the above-mentioned calls, Plaintiff advised ATT each time that she did not owe a balance on her account and requested that ATT stop calling her Cellular Telephone.

54.     On or about December 9, 2016, Plaintiff contacted ATT's support representative "Jopf D." through ATT's online customer support chat portal. Please see attached a true and correct copy of said chat labeled as Exhibit "D."

55.     During the immediately-aforementioned communications, Plaintiff *again* advised ATT that she did not owe a balance on her account and Plaintiff *again* requested that ATT stop making calls to her Cellular Telephone in an attempt to collect the Alleged Debt.  *See* Ex. D.

56.     In response, Jopf D. confirmed that the account balance (i.e., the Alleged Debt balance) was zero-dollars ($0.00), stated that ATT would stop calling Plaintiff's Cellular Telephone, and assured her that the Alleged Debt would not be reported on her credit report.  *See* Ex. D.

57.     On or about December 14, 2016, despite ATT canceling Plaintiff's account and advising Plaintiff multiple times that she did not owe a balance on the Alleged Debt, ATT directly sent Plaintiff a balance due notice in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said notice labeled as Exhibit "E."

58.     On or about December 21, 2016, despite ATT canceling Plaintiff's account and advising Plaintiff multiple times that she did not owe a balance on the Alleged Debt, ATT *again* sent Plaintiff a balance due notice in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said balance due notice labeled as Exhibit "F."

59.     On or before January 23, 2017, despite ATT canceling Plaintiff's account and advising Plaintiff multiple times that she did not owe a balance on the Alleged Debt, ATT turned the Alleged Debt over to SCS for collection from Plaintiff.

60.     When ATT turned the Alleged Debt over to SCS, ATT, consistent with its duty to do so, advised SCS that Plaintiff requested that all calls to Plaintiff's Cellular Telephone cease.

61.     On or about January 23, 2017, despite ATT canceling the Plaintiff's account and advising Plaintiff multiple times that she did not owe a balance on the Alleged Debt, SCS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent a collection letter

directly to Plaintiff in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "G."

62.     On or about February 4, 2017, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "Undersigned Counsel") with respect to her debts generally, including the Alleged Debt.

63.     Between January 2017 and November 2017, ATT also turned the Alleged Debt over to SCS and/or ERC for collection from Plaintiff.

64.     When ATT turned the Alleged Debt over to SCS and/or ERC, ATT, consistent with its duty to do so, advised ICS and/or ERC that Plaintiff requested all calls to Plaintiff's Cellular Telephone cease.

65.     Between January 2017 and December 2017, ICS, SCS, and/or ERC, acting on ATT's behalf—and with ATT's consent, knowledge and approval—repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

66.     During several of immediately-aforementioned telephone calls, Plaintiff advised ICS, SCS, and/or ERC of Undersigned Counsel's legal representation with respect to the Alleged Debt, provided Undersigned Counsel's contact information, and requested that Defendants' calls cease.

67.     On or about May 25, 2017, despite possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, ICS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval, directly sent Plaintiff a collection letter in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "H."

68.     On or about June 9, 2017, despite lacking Plaintiff's prior express consent, ICS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval, called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

69.     ICS made the immediately-aforementioned call in an attempt to collect the Debt from Plaintiff.

70.     On or about July 1, 2017, despite possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, ICS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval, directly sent Plaintiff a collection letter in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "I."

71.     Additionally, between July 2017 and December 2017, ICS reported a balance due on the Alleged Debt on Plaintiff's consumer credit reports in an attempt to collect the Alleged Debt.  Please see attached true and correct copies of Plaintiff's Equifax and Experian credit report supplied by Credit Karma labeled as Exhibit "J."

72.     Moreover, on or about July 29, 2017, ICS sent a collection letter to Undersigned Counsel's office in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "K."

73.     The immediately-aforementioned collection letter addressed to Undersigned Counsel's office demonstrates that ICS possessed actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and possessed Undersigned Counsel's contact information.  *See* Ex. K.

74.     On or about November 29, 2017, despite possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, ERC,

acting on ATT's behalf—and with ATT's consent, knowledge, and approval, directly sent Plaintiff a collection letter in an attempt to collect the Alleged Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "L."

75.    Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued Alleged Debt collection communications, to record the specifics of each and every communication made to Plaintiff. Plaintiff asserts, however, that the above-referenced communications are but a sub-set of the communications made in violation of the FCCPA, FDCPA, and TCPA. Further, Defendants are in the best position to determine and ascertain the number and methodology of communications made to Plaintiff.

76.    Plaintiff retained Undersigned Counsel for the purpose of pursing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

77.    Florida Statutes, Section 559.77 provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

78.    United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, costs, and an award of attorneys' fees to Plaintiff, should Plaintiff prevail in this matter against SCS and/or ICS.

79.    United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone without consent in violation of the TCPA or the regulations proscribed thereunder.

13

80.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three (3) times, or $1,500.00, for each call made using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone without consent in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

81.     As of the date of this Complaint, Defendants have not initiated a lawsuit in an effort to collect the Alleged Debt.  Likewise, no final judgment regarding the Alleged Debt has been either obtained by or transferred to Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

82.     Defendants are each subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting a consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

83.     Specifically, despite ATT repeatedly advising Plaintiff that ATT cancelled Plaintiff's account and she did not owe the Alleged Debt, and despite Plaintiff's repeated disputes of the Alleged Debt and requests that Defendants cease calling Plaintiff's Cellular Telephone, ATT sent *at least* one (1) billing statement, *at least* two (2) past due notices, and repeatedly called Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt from Plaintiff.

84.     Similarly, despite ATT repeatedly advising Plaintiff that ATT cancelled her account and she did not owe a balance on the Alleged Debt, SCS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to

14

Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

85.    Also, despite ATT repeatedly advising Plaintiff that ATT cancelled her account and she did not owe a balance on the Alleged Debt, ICS, acting on ATT's behalf—and with ATT's consent, knowledge and approval—sent *at least* three (3) collection letters directly to Plaintiff, repeatedly made phone calls to Plaintiff's Cellular Telephone, and reported the Alleged Debt as owed and due on Plaintiff's Equifax and Experian Credit reports between July 2017 and December 2017.

86.    Moreover, despite ATT repeatedly advising Plaintiff that ATT cancelled her account and she did not owe a balance on the Alleged Debt, ERC, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

87.    Defendants conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt by leading Plaintiff to believe that despite ATT's repeated statements that Plaintiff did not owe a balance and despite Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, Defendants could and would continue to attempt to collect the Alleged Debt directly from Plaintiff until Plaintiff made payment to Defendants on the Alleged Debt.

88.    Defendants' willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

89.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

90.     Defendants are each subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimate or by asserting the existence of some legal right when Defendants know that the right does not exist.

91.     Specifically, Defendants possessed actual knowledge that Plaintiff did not owe the Alleged Debt as ATT repeatedly advised Plaintiff that ATT cancelled Plaintiff's account and Plaintiff did not owe a balance on the Alleged Debt.

92.     Despite possessing such knowledge, SCS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

93.     Despite possessing such knowledge, ICS, acting on ATT's behalf—and with ATT's consent, knowledge and approval—sent *at least* three (3) collection letters directly to Plaintiff, repeatedly made phone calls to Plaintiff's Cellular Telephone, and reported the Alleged Debt as owed and due on Plaintiff's Equifax and Experian Credit reports between July 2017 and December 2017.

94.     Despite possessing such knowledge, ERC, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

95.     During the course of Defendants' attempts to collect the Alleged Debt, Defendants knowingly and falsely asserted that the Alleged Debt was legitimate and owed by Plaintiff personally, and falsely asserted that they possessed the legal right to collect the alleged past due amounts on the Alleged Debt from Plaintiff by sending letters directly to Plaintiff, by calling Plaintiff's Cellular Telephone, and by reporting the Alleged Debt as owed and due on Plaintiff's consumer credit reports.  Defendants knew they did not possess such rights.

96.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

97.     Defendants are each subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing knowledge of Plaintiff's representation by legal counsel with respect to the Alleged Debt including said legal counsel's contact information.

98.     Specifically, Plaintiff advised ICS, SCS, and/or ERC of Undersigned Counsel's representation with respect to the Alleged Debt when ICS, SCS, and/or ERC called her Cellular

17

Telephone, and Plaintiff provided ICS, SCS, and/or ERC with Undersigned Counsel's contact information.

99.     Additionally, ICS sent a collection letter regarding the Alleged Debt to Undersigned Counsel's office, demonstrating that ICS possessed actual knowledge of Undersigned Counsel's representation with respect to the Alleged Debt and possessed Undersigned Counsel's contact information.

100.    Despite possessing such knowledge, SCS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

101.    Despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, ICS, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—directly sent Plaintiff *at least* three (3) collection letters and repeatedly made calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

102.    Despite possessing such knowledge, ERC, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

103.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
<u>**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)**</u>

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

104.     ICS, SCS, and ERC are subject to, and violated the provisions of, 15 United States Code, Section 1692c(a)(2) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing knowledge of Plaintiff's representation by legal counsel with respect to the Alleged Debt.

105.     Specifically, Plaintiff advised ICS, SCS, and/or ERC of Undersigned Counsel's representation with respect to the Alleged Debt when ICS, SCS, and/or ERC called her Cellular Telephone and she provided ICS, SCS, and/or ERC with Undersigned Counsel's contact information.

106.     Additionally, ICS sent a collection letter regarding the Alleged Debt to Undersigned Counsel's office, demonstrating that ICS possessed actual knowledge of Undersigned Counsel's representation with respect to the Alleged Debt and possessed Undersigned Counsel's contact information.

107.     Despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Alleged Debt and Undersigned Counsel's contact information, ICS directly sent Plaintiff *at least* three (3) collection letters and repeatedly made calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

108.     Despite possessing such knowledge, SCS sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

109.    Despite possessing such knowledge, ERC sent *at least* one (1) collection letter directly to Plaintiff and repeatedly made phone calls to Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

110.    As such, ICS, SCS, and ERC each violated 15 United States Code, Section 1692c(a)(2) by intentionally communicating directly with Plaintiff despite possessing actual knowledge of Plaintiff's legal representation by Undersigned Counsel with respect to the Alleged Debt.

111.    As a direct and proximate result of ICS's, SCS's, and ERC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT FIVE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

112.    SCS, ICS, and ERC are both subject to, and each violated the provisions of 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the Alleged Debt.

113.    Specifically, despite ATT repeatedly advising Plaintiff that ATT cancelled the account and that Plaintiff did not owe a balance on the Alleged Debt, SCS sent *at least* one (1) collection letter directly to Plaintiff, ERC sent *at least* one (1) collection letter directly to Plaintiff, ICS sent at least three (3) collection letters requesting payment on the Alleged Debt, ICS repeatedly called Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt, and ICS reported the Alleged Debt as owed and due on Plaintiff's consumer credit reports.

114.    SCS, ICS, and ERC intended to abuse and harass Plaintiff into paying the Alleged Debt by leading Plaintiff to believe that despite ATT's statement that Plaintiff did not owe a balance and despite Undersigned Counsel's legal representation of Plaintiff with respect to the Alleged Debt, SCS, ICS, and ERC could and would continue to attempt to collect the Alleged Debt directly from Plaintiff unless and until Plaintiff made payment to Defendants on the Alleged Debt.

115.    As a direct and proximate result of SCS's, ICS's, and ERC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), e(8) and e(10)**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

116.    SCS, ICS, and ERC are each subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt, and by communicating false personal credit information to national credit bureaus regarding Plaintiff and the Alleged Debt.

117.    Specifically, ATT repeatedly advised Plaintiff that ATT cancelled Plaintiff's account and that she did not owe a balance on the Alleged Debt.

118.    Despite Plaintiff not owing a balance on the Alleged Debt, SCS, ICS, and ERC each sent collection letters falsely and deceptively asserting that Plaintiff owed a balance on the Alleged Debt, and misleadingly indicating that SCS, ICS, and ERC would continue to collect the Alleged Debt directly from Plaintiff unless and until she tendered payment to Defendants.

119.    Additionally, ICS, SCS, and/or ERC repeatedly called Plaintiff's Cellular Telephone in an attempt to collect the Alleged Debt.

120.    Finally, ICS falsely reported the Alleged Debt as owed and due on Plaintiff's personal Equifax and Experian credit reports between July 2017 and December 2017.

121.    SCS, ICS, and ERC each knew they could not collect the Alleged Debt and knew such direct contact and collection attempts and credit reporting were specifically prohibited by the FDCPA.

122.    SCS's, ICS's, and ERC's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to Defendants on the Alleged Debt or continue to endure Defendants' unlawful collection attempts and continued false credit reporting of the Alleged Debt.

123.    As a direct and proximate result of SCS's and ICS's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SEVEN:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f and f(1)</u>**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

124.    SCS, ICS, and ERC are both subject to, and each violated the provisions of, 15 United States Code, Section 1692f and f(1) by using unfair or unconscionable means in an attempt to collect the Alleged Debt and by attempting to collect an amount not expressly authorized by the agreement creating the Alleged Debt or permitted by law.

125.    Specifically, ATT repeatedly advised Plaintiff that ATT cancelled Plaintiff's account and she did not owe a balance on the Alleged Debt.

126.    Despite such repeated assurances, SCS sent *at least* one (1) collection letter requesting payment on the Alleged Debt, ERC sent *at least* one (1) collection letter requesting payment on the Alleged Debt, ICS sent *at least* three (3) collection letters requesting payment on the Alleged Debt, ICS, SCS, and/or ERC repeatedly called Plaintiff's Cellular Telephone requesting payment on the Alleged Debt, and ICS falsely reported a balance due on the Alleged Debt on Plaintiff's consumer credit reports.

127.    SCS's, ICS's, and ERC's immediately-aforementioned communications unconscionably attempted to collect an unauthorized amount from Plaintiff as Plaintiff did not owe the Alleged Debt.

128.    As a direct and proximate result of SCS's, ICS's, and ERC's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT EIGHT:**
**TELEPHONE CONSUMER PROTECTION ACT –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through eighty-one (81) as if fully restated herein and further states as follows:

129.    Defendants are subject to, and violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice that makes a call to a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

130.    Specifically, at no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

131.    If Defendants contend they nonetheless possessed Plaintiff's prior express consent, Plaintiff revoked such consent the moment she requested that ATT stop calling her Cellular Telephone in an attempt to collect the Alleged Debt.

132.    Despite lacking Plaintiff's prior express consent, ATT repeatedly called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in both 2016 and 2017.

133.    Despite lacking Plaintiff's prior express consent, ICS, SCS, and/or ERC, acting on ATT's behalf—and with ATT's consent, knowledge, and approval—repeatedly called Plaintiff's Cellular Telephone using an ATDS, a PTSD, or an APV between January 2017 and December 2017.

134.    Defendants' phone calls complained of herein are the result of a repeated willful and knowing violation of the TCPA.

135.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

      a.    The periodic loss of her Cellular Telephone service;

      b.    Lost material costs associated with the use of peak time Cellular Telephone minutes allotted under her Cellular Telephone service contract;

      c.    Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the willful and knowing calls placed in violation of the TCPA; and

      d.    Statutory damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests:

a.      Judgment against Defendants declaring that Defendants violated the FCCPA;

b.      Judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c.      Judgment against SCS, ICS, and ERC for maximum statutory damages for violations of the FDCPA;

d.      Judgment against Defendants for statutory damages in the amount of $500.00 for each of Defendants' telephone calls that violated the TCPA;

e.      Judgment against Defendants for treble damages in the amount of an additional $1,000.00 for each telephone call made in violation of the TCPA for which Defendants acted knowingly or willingly—or both;

f.      Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

g.      Actual damages in an amount to be determined at trial;

h.      An award of attorneys' fees and costs; and

i.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

LEAVENLAW

*/s/ Sean E. McEleney*

☐ **Ian R. Leavengood, Esq., FBN 0010167**
☐ **Gregory H. Lercher, Esq., FBN 0106991**
**[X] Sean E. McEleney, Esq., FBN 0125561**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
glercher@leavenlaw.com
smceleney@leavenlaw.com
*Attorneys for Plaintiff*